[Civil No. 986.    Filed March 22, 1907.]

[89 Pac. 531.]

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, a Corporation, Defendant and Appellant, v. DAVID BABBITT et al., Plaintiffs and Appellees.

1. LIFE INSURANCE—POLICY—STATUTORY CONSTRUCTION—FORFEITURE—TERM INSURANCE—REV. STATS. ARIZ. 1901, PAR. 809.—Paragraph 809, *supra,* providing that every life policy shall contain a stipulation that when, after three full annual premiums have been paid, the policy shall become void by nonpayment of any premium, the net reserve at a certain rate shall be applied as a single premium to the purchase of term insurance for the full amount insured by the policy, unless said policy specifically provides for tontine or for other term or paid-up insurance, and that if any company delivered to any person in the territory a policy not conforming to the statutes, the right of the company to transact business in the territory shall cease, does not read into the policy the provision as to term insurance, but merely imposes a penalty on the failure to so provide.

APPEAL from a judgment of the District Court of the Fourth Judicial District, in and for the County of Coconino. Richard E. Sloan, Judge. Reversed and remanded with instructions.

On February 28, 1898, William P. Coyne made written application to the appellant, through its agent at Flagstaff, Arizona, for a policy of insurance for $2,000 upon his life, which was accepted, and appellant thereafter, on or about March 11, 1898, upon the payment of the first annual premium of $105, executed and delivered to the said Coyne, at Flagstaff, Arizona, its "Guaranteed Cash Value" policy of insurance, No. 860,184, for $2,000, which was thereafter on December 16, 1903, assigned by Coyne, for a valuable consideration, to the appellees. The policy provided that premiums might be paid quarterly, and Coyne paid all premiums which became due thereon up until, but not including, a quarterly premium payment which became due on December 8, 1904. Coyne died on April 27, 1905, and at his death no quarterly or other premium had been paid on the policy after the quarterly premium paid on September 8, 1904. Appellees gave notice of the death of Coyne to the

appellant, and thereafter, on June 28, 1905, furnished appellant due proof of Coyne's death, and demanded of appellant $2,000, the full amount of the policy, and offered to surrender the policy only upon the payment of such amount. Appellant refused to pay to appellees the sum of $2,000, or any other sum in excess of $600, the full amount which appellant claimed could possibly be due under the terms of said policy. Appellees brought suit against the appellant in the district court of Coconino county on March 19, 1906, set up the foregoing facts in their complaint, made the application signed by Coyne, and the policy issued by the appellant, a part of the complaint, and alleged that said Coyne had, up to the time of his death, fully kept and performed all the terms and conditions of said policy upon his part, and that up to December 8, 1904, he had paid all premiums and sums of money due under his said contract of insurance. The defendant pleaded a general demurrer, upon the ground that the complaint did not state facts sufficient to constitute a cause of action, a plea in bar, on the ground that neither the plaintiffs nor their assignor had kept or performed the obligations on their part required by the terms of the written contract as set forth in the complaint, followed by a general denial. The court overruled the demurrer and the plea in bar, to which ruling the defendant excepted, and filed an amended answer, in which it admitted the allegations relative to the application and issue of the policy, denied that either Coyne or the plaintiffs had complied with the terms and conditions thereof, and alleged that, if any sum at all was then due the plaintiffs under the terms of the said policy and contract, such sum amounted to $600, less the unpaid quarterly premium due from the said Coyne on December 8, 1904, and alleged that appellant had at all times been and was then willing to pay to the plaintiffs the sum of $572, and offered to pay the said sum into court, provided the plaintiffs would surrender and deliver the contract and policy of insurance.

The case was tried to the court without a jury, and a judgment was rendered on the thirty-first day of May, 1906, against the appellant for the sum of $1,916, with interest and costs, from which judgment and the denial of the motion for a new trial appellant has brought an appeal to this court, and has made and relied on, among others, the following assignments of error:

"(1) That the trial court erred in overruling defendant's general demurrer to plaintiff's complaint, for the reason that it appears from said complaint, and from the copy of said policy of insurance attached thereto, that said contract or policy of insurance had, by its express terms, lapsed for nonpayment of premiums when due, and had thereby become wholly forfeited, and that there was therefore, at the time said complaint was filed, nothing due to plaintiffs upon said policy.

"(2) That the trial court erred in overruling defendant's plea in bar of the above cause, for the same reasons.

"(3) That the findings of fact of the trial court are contrary to the evidence, and not supported thereby in the particulars and for the reasons following: 1. That there was no evidence introduced on the trial of said cause showing, or tending to show, 'that, prior to the commencement of this action, plaintiffs demanded payment from the defendants of the amount due upon said policy of insurance' as set forth in finding 9. 2. That there was no evidence introduced on the trial of said cause showing, or tending to show, 'that said contract or policy of insurance contained no specific contract for tontine or for other term or paid-up insurance,' as set forth in finding 10; but that, on the contrary, said policy is, by its very terms, an express contract for paid-up insurance, as appears from paragraph 5, on page 2, of said policy, and from the table of loan and surrender values therein contained.

"(4) That the court erred in refusing the defendant's motion to arrest, vacate, and set aside the judgment and decree rendered, given and entered in said cause, and to grant it a new trial of said cause for the reasons stated in said motion, and for the further reasons: 1. That said judgment and decree is contrary to, and is not supported by, the evidence introduced on the trial of said cause, and that all the evidence introduced by plaintiff showed that said policy had by its express terms and provisions lapsed on December 8, 1904, for nonpayment of the premium when due, and therefore that there was nothing due under the terms thereof. 2. That said judgment and decree is contrary to law, and that it is based upon the erroneous conclusion of law that paragraph 809, Revised Statutes of Arizona of 1901, should be read into said contract or policy of insurance, and made a part thereof."

"(6) That the judgment appealed from is erroneous and contrary to law in the particulars following: 1. That it is

based upon the erroneous conclusion of law that said policy of insurance was, at the time of the death of said Coyne, in full force and effect; whereas, it had by its express terms lapsed on December 8, 1904, by reason of nonpayment, and become wholly forfeited and without value, and that at the time of the commencement of said action there was nothing due plaintiffs under the terms of said policy. . . . 4. That it is based upon the erroneous conclusion of law that paragraph 809, Revised Statutes of Arizona of 1901, should be read into the contract or policy of insurance, and made a part thereof; whereas said section does not authorize any such interpretation, for the reason that it is a penal statute in which there is prescribed a fixed, definite, and exclusive penalty for any failure to comply with its provisions.''

Paul Burks, for Appellant.

Section 809, Revised Statutes of Arizona of 1901, is not to be read into the policy. It forms no part of the policy and is in no way determinative of appellee's rights under the policy. The statute does not determine in any respect the rights of a policy-holder under his contract. It merely prescribes the form of policy to be issued in certain cases, and prescribes the penalty which shall be imposed on any company failing to comply with its provisions; and is clearly a matter between the territory and the insurance company doing business within the territory, and does not authorize the courts to make all contracts conform to its terms, if perchance the insurer and the insured elect to enter into contracts in contravention of the statute. *Straube* v. *Pacific Mutual Life Ins. Co. of California,* 123 Cal. 677, 56 Pac. 546; *Rife* v. *Union Cent. Life Ins. Co.,* 129 Cal. 455, 62 Pac. 48, construing the statute from which our section 809 was borrowed. Section 809, Revised Statutes of 1901, is a penal statute, and must be strictly construed. *Fritts* v. *Palmer,* 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317; Lewis' Sutherland's Statutory Construction, 531, and cases cited; *Straube* v. *Pacific Mut. Life Ins. Co.,* 123 Cal. 677, 56 Pac. 546.

Edward M. Doe, for Appellees.

The policy was delivered and the first premium note and payment made in Arizona; the contract is therefore subject to Arizona laws. *Equitable Life Assur. Soc.* v. *Clements,* 140

U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497; *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; *New York Life Ins. Co.* v. *Cravens,* 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116. The territory has the right to prevent a foreign corporation from doing business within its limits, to prescribe the conditions under which it may enter, and dictate the character and terms of contracts it may enter into with citizens of the territory to any extent it chooses, subject only to the restrictions imposed by the federal constitution. *Security Mut. Life Ins. Co.* v. *Prewitt,* 202 U. S. 240, 26 Sup. Ct. 619, 50 L. Ed. 1013; *Hooper* v. *California,* 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297; *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552.

Statutory provisions like paragraph 809, Revised Statutes of Arizona, are as much a part of the policy as though written in it; they are to be construed as though written in the policy. They cannot, by the stipulation or agreement of the parties, be waived or modified. Vance on Insurance, 186; Bacon on Benefit Societies and Life Insurance, 3d ed., sec. 176; Ostrander on Fire Insurance, sec. 32; *Strauss* v. *Union Central Life Ins. Co.,* 170 N. Y. 356, 63 N. E. 347; *Equitable Life Assur. Soc.* v. *Clements,* 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497; *New York Life Ins. Co.* v. *Cravens,* 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116; Joyce on Insurance, sec. 194; *Oshkosh Gas Light Co.* v. *Germania Fire Ins. Co.,* 71 Wis. 454, 5 Am. St. Rep. 233, 37 N. W. 819. In making the exception the legislature emphasizes its meaning and intent that the assured shall, in any event, have the benefit of a self-operating provision by using the word "specifically." The word "specific" is defined by all the lexicographers as "fixed, definite, certain." In *Smith* v. *Mutual Ben. Life Ins. Co.,* 173 Mo. 329, 72 S. W. 935, section 2 of the syllabus reads: "A provision in the policy that the surrender value is payable only on condition that it be applied for within three months from the nonpayment of a premium when due, and the policy then surrendered and canceled, is not a provision for an unconditional cash surrender as required by the Missouri statute, and is such a limitation as takes the case out of the statute." To the same effect is *Cravens* v. *New York Life Ins. Co.,* 148 Mo. 583, 71 Am. St. Rep. 628, 50 S. W. 519, 53 L. R. A. 305, afterward affirmed by the United States supreme court in 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116. Life insurance policies are liberally construed in favor of the as-

sured so as not to defeat, without a plain necessity, his claim to the indemnity, which in making the insurance it was his object to secure. If two interpretations may be made, that one should be adopted which is most favorable to the assured. May on Insurance, 2d ed., 172.

DOAN, J.—The legal proposition that is decisive of this case is fairly presented in the first and fourth subdivisions of the sixth assignment of error, and it may as well be taken up and determined at the outset, because it is not only determinative of the general result of the case, but upon it depends the correctness or incorrectness of the legal propositions urged in the earlier assignments. There is no question of fact in the case. The testimony is such that the case may as well be treated as upon an agreed statement of facts.

The applicant stated in the application: "I hereby agree that this application and the policy hereby applied for, taken together, shall constitute the entire contract between the parties hereto." The policy provides: "This policy shall lapse, and together with all premiums paid thereon shall forfeit to the society on the nonpayment of any premium when due, excepting that upon due surrender of this policy within six months after lapse, providing premiums have been duly paid for at least three years of insurance, the society will give the assured the choice of either a cash value or non-participating paid-up life policy, at the date of lapse, as fixed in the following table of surrender values, the amount of which shall be based on the number of full years' premium that have been paid. . . . In consideration of the premises, it is understood and agreed that all right or claim for temporary insurance or any other surrender value than that provided in this contract is hereby waived and relinquished. . . . " The table of surrender values provides that, at the end of the sixth year, the cash surrender value shall be $300, and the paid-up life policy $600. The date of the policy was the 8th of March, 1898, the date of the lapse was the 8th of December, 1904, and the date of Coyne's death was the twenty-seventh day of April, 1905. If the application and policy, taken together, constitute the entire contract between the parties, the policy had lapsed, and had forfeited to the society on the eighth day of December, 1904, and as the assured had not, within six months thereafter, upon surrender of the policy, requested either the cash value ($300) or a nonparticipating paid-up life policy

for $600, there was nothing due under the contract or policy from the appellant. *Inloes* v. *Prudential Ins. Co.,* 109 Mo. App. 104, 82 S. W. 1089.

Paragraph 809 of the Revised Statutes of Arizona of 1901 reads as follows: "Every contract or policy of insurance hereafter made by any person or corporation organized under the laws of this territory, or under those of any other state or country, with and upon the life of a resident of this territory, and delivered within this territory, shall contain, unless specifically contracted between the insurer and the insured for tontine insurance, or for other term or paid-up insurance, a stipulation that when, after three full annual premiums shall have been paid on such policy, it shall cease or become void solely by the nonpayment of any premium when due, its entire net reserve by the American experience mortality, and interest at four and one-half per cent yearly, less any indebtedness to the company on such policy, shall be applied by such company as a single premium at such company's published rates in force at the date of the original policy, but at the age of the insured at time of lapse, either to the purchase of nonparticipating term insurance, for the full amount insured by such policy, or upon the written application by the owner of such policy, and the surrender thereof to such company within three months from such nonpayment of premium, to the purchase of a nonparticipating paid-up policy payable at the time that the original policy would be payable if continued in force; both kinds of insurance to be subject to the same conditions except as to payment of premiums, as those of the original policy. It may be provided, however, in such stipulation, that no part of such term insurance shall be due or payable unless satisfactory proofs of death be furnished to the insuring company within one year after death, and that if death shall occur within three years after such nonpayment of premium, and during such term of insurance, there shall be deducted from the amount payable the sum of all the premiums that would have become due on the original policy if it had continued in force. If the reserve on endowment policies be more than enough to purchase temporary insurance as aforesaid, to the end of the endowment term, the excess shall be applied to the purchase of pure endowment insurance, payable at the end of the term if the insured be then living. If any life insurance corporation or company shall deliver to any person in this territory a policy of insurance

upon the life of any person residing in this territory not in conformity with the provisions of this section, the right of such corporation or company to transact business in this territory shall thereupon and thereby cease and terminate, and any district court of this territory, upon the fact appearing that any company or person has violated the provisions of this section, shall enjoin such company or person from doing or transacting any insurance business within the territory, either as principal or agent. The attorney general, district attorney or any person interested, may be the party plaintiff in such action.'' While no direct reference is made to the statute just quoted, either in the decision of the trial court or in the judgment, it is evident that the court did read the provisions of the statute into the policy, and on that theory made the findings and rendered the judgment presented in this record.

The counsel for the appellees, in his presentation of the case to this court, has said that: ''The territory has the right to prevent a foreign corporation from doing business within its limits, to prescribe the conditions under which it may enter, and dictate the character and terms of the contracts it may enter into with citizens of the territory, to any extent it chooses, subject only to the restrictions imposed by the federal constitution.'' ''Statutory provisions, like paragraph 809 of the Revised Statutes of Arizona, are as much a part of the policy as though written in it, and they are to be construed as though written in the policy. They cannot, by the stipulation or agreement of parties, be waived or modified. The law with reference to which the policy is executed governs absolutely the rights of the parties thereto. . . . Therefore, it is properly said that the law writes in every contract all existing statutes that are applicable to the transaction, and they become parts of the contracts as completely as if the parties had copied them in its face, and, further, these terms render null and void any other provisions agreed upon by the parties that may be in conflict with these terms by the hand of the law. . . . In Cooley's Briefs of the Law of Insurance, volume 3, pages 2395, 2396, may be found the nonforfeiture statutes of many states, showing their similarity to that of Arizona. All the statutes in force are similar to it, not always alike in their phraseology in certain parts, but remarkably similar. Our statute provides a method of determining the value of the policy, and that method is almost identical

with the method provided for in Massachusetts, in Missouri, in Maine, New Jersey, and formerly New York. Our statute lays down the rule that every contract or policy of insurance hereafter made shall contain the provision that, after three annual premiums have been paid, it shall not be forfeited, and it then goes into detail as to just how the value of the policy is to be calculated, and that method is identical with the method adopted and in use in all the nonforfeiting acts, except that some acts provide that the rate of interest shall be three, others four, and others four and one-half; e. g., see the nonforfeiting law of Missouri, in the note to *New York Life Ins. Co.* v. *Cravens,* 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116.''

This reasoning, accompanied by the general reference to the different statutory provisions relative to the remedy of policyholders against insurance companies, and based upon the cases cited that arose under the Missouri statute that is referred to as almost identical with paragraph 809, doubtless misled the learned judge of the lower court, who was called upon to rule on this question without having the different statutes before him. The law as cited in the several instances by the counsel for the appellees is sound, supported by good reasoning, and based upon statutory provisions that have been decided by the United States supreme court to be constitutional. There is no question but that the territory has the right to prevent a foreign corporation from doing business within its limits, and to prescribe the conditions under which it may enter, and dictate the character and terms of the contracts it may enter into with citizens of the territory to any extent it chooses, subject only to the restrictions imposed by the federal constitution or laws. *Security Mutual Life Ins. Co.* v. *Prewitt,* 202 U. S. 246, 26 Sup. Ct. 619, 50 L. Ed. 1013. In other words, there is no question of the right on the part of the territory to write into the policy any statutory provision within the limits referred to. *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552.

The only question presented to us is: Did the territory do so? The Missouri statute that has been in one place stated by the counsel for the appellees to be ''remarkably similar'' to ours, and in another to be ''almost identical with it,'' has done so. Our statute has not, and for the reason that the one has, and the other has not, the cases decided in the court of last resort under the one statute do not at all control the

decision of cases arising under the other statute. The Missouri statute provides that: "No policy . . . shall, after payment upon it of two annual premiums, be forfeited, or become void by reason of the nonpayment of premiums thereon, but it shall be subject to the following rules of commutation, to wit." Had our statute made a like provision, the judgment of the court in this instance would have been correct, and would have been fully supported by *New York Life Ins. Co.* v. *Cravens,* 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116; *Equitable L. A. S.* v. *Clements,* 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497. Our statute, however, instead of making a provision by which the insurance contract should be interpreted by either, declaring, as does the Missouri statute, that such should be the measure of recovery under the contract, whether so expressly provided therein or not (note to *New York Life Ins. Co.* v. *Cravens,* 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116), or by providing, as the Ohio statute, a bar to any certain defense on the part of the company in an action on a claim under a policy (section 3625, Revised Statutes of Ohio of 1898, cited in *Hancock Mut. Life Ins. Co.* v. *Warren,* 181 U. S. 73, 21 Sup. Ct. 535, 45 L. Ed. 755), requires that "every contract . . . shall contain, unless . . . a stipulation that when, after three," etc., and then provides in the same paragraph, as a penalty for noncompliance with such requirement, that, "if any life insurance corporation or company shall deliver to any person in this territory a policy . . . not in conformity with the provisions of this section, the right of such corporation or company to transact business in this territory shall thereupon and thereby cease and terminate," and then provides for terminating the right of any such company. This language clearly recognizes the right of insurance companies to do business in the territory, and to disregard the provisions of paragraph 809 by writing policies not containing the stipulation therein required, and with equal clearness expresses the penalty that would be incurred by any company which might exercise its right to make a contract other than that directed and required by the statute, but does not attempt to formulate or write into the contract any term or provision which the company might neglect or decline to insert therein. *Fritts* v. *Palmer,* 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317. The distinction between these two classes of legislative enactments in regard to the obligations of the insurance companies under their policies is very similar to the

distinction between the statutory enactments of the different states in regard to the rights of insurance companies to transfer their litigation from the state to the federal courts. The cases that present the different statutes intended to prevent this action on the part of the insurance companies are collated in the case of the *Security Mutual Life Ins. Co.* v. *Prewitt,* 202 U. S. 246, 26 Sup. Ct. 619, 50 L. Ed. 1013, wherein the distinction is plainly pointed out between the statutes that require the insurance companies, in order to do business, to make an application or an agreement that shall contain a stipulation that such corporation would not remove a pending suit from the state to the federal court, and those that provide that, if any company shall remove any such suit or proceeding to any federal court, the commissioner shall forthwith revoke all authority of such company and its agents to do business in the state. The former class of legislation was generally held to be void; whereas the latter was sustained, the court saying that in the one case it was the exaction of a stipulation or agreement in advance as a condition of granting a permit that rendered the statute illegal, while it was held that, where no requirement or agreement not to remove was required as a condition for doing business in the state, "the mere enactment of a statute which, in substance, says, if you choose to exercise your right to remove a case into the federal court, your right to further do business within the state shall cease, and your permit shall be withdrawn, is not open to any constitutional objection."

If our statute, instead of the language used, had said: "No contract or policy of insurance hereafter made by any person or corporation organized under the laws of this territory, or under those of any other state or country, with and upon the life of a resident of this territory, and delivered within this territory, shall, after three full annual premiums shall have been paid on such policy, cease or become void solely by the nonpayment of any premium when due; but, unless such contract or policy of insurance shall specifically provide for tontine insurance, or for other term or paid-up insurance, it shall be subject to the following rules of commutation, to wit, its entire net reserve value at the time the premium becomes due and is not paid as computed by the American experience mortality tables, and interest at four and one-half per cent yearly"—and then follow the language used up to and including the words "payable at the end of the term, if the

insured be then living," and let the paragraph terminate there
before the words, "if any life insurance corporation or com-
pany shall deliver," the effect of the statute would be to read
that provision into the policy, regardless of any language in
either application or policy at variance therewith. Had that
been done, the recovery in this case would turn upon the ques-
tion whether this contract would be taken out from the effect
of the statute by virtue of the provision in the contract for a
paid-up life policy, as is claimed by appellant in second sub-
division of the third assignment of error; but, under the pres-
ent wording of the statute, that becomes purely an academic
question.

Our statute, as cited *supra,* clearly declares the termination
of the right to do business in the territory of any company
that violates the provisions of paragraph 809, and confers
upon the attorney general or district attorney the power to
enforce such forfeiture of right against such company, but
does not affect the terms of any contract entered into, or the
rights of any person under a policy issued, by such company
before the forfeiture of such right to do business. We ap-
prove the reasoning of the supreme court of California in
two cases very similar to the one at bar, and under a statute
identical in its language with ours. *Straube* v. *Pacific Mutual
Life Ins. Co.,* 123 Cal. 677, 56 Pac. 546; *Rife* v. *Union
Central Life Ins. Co.,* 129 Cal. 455, 62 Pac. 48.

For the reasons above given, the demurrer to the complaint
should have been sustained, upon the ground that the com-
plaint failed to state facts sufficient to constitute a cause of
action. The allegation that Coyne died on the twenty-seventh
day of April, 1905, and had paid all premiums and sums of
money due under his said contract of insurance up to Decem-
ber 8, 1904, without any allegation that he had paid the
premiums up to the time of his death, or that he had within
six months after lapse, upon surrender of the policy, re-
quested either the cash surrender value or a paid-up life
policy, failed to state facts sufficient to constitute a cause of
action against the company on any other theory than that the
reserve value of the policy was, by virtue of the provisions of
paragraph 809 of our statutes, automatically applied to the
procurement of term insurance in the full amount of his
policy that would continue in force from the eighth day of
December, 1904, until after the date of his death. For the
same reasons the judgment, as rendered, having been neces-

sarily based upon the same theory, was, in the view of the case we have adopted, unsupported by any evidence.

The judgment is reversed, and the case remanded, with instructions to the lower court to sustain the demurrer to the complaint, and for such further proceedings as may be necessary, not inconsistent with this opinion.

KENT, C. J., and CAMPBELL and NAVE, JJ., concur.