## METROPOLITAN LIFE INS. CO. v. LILLARD et al.

No. 15723—Opinion Filed Jan. 19, 1926.

Rehearing Denied July 20, 1926.

**1. Insurance—Life Policy — Options of Insured — Invalidity of Discriminatory Provisions.**

Where a policy of life insurance makes a distinction between options allowed the insurance under such policy, to the effect that if there was no loan indebtedness against the cash surrender value of the policy, the insured had the right of election of one of three options, but if there was an indebtedness against the cash surrender value, the insured had no option or choice, such a provision of the policy is contrary to the provisions of section 6721, par. 7, and section 6731, C. O. S. 1921, and is against public policy, and is void and uninforceable.

**2. Same—Nonpayment of Premium—Death as Automatically Extending Policy Under Cash Surrender Value.**

Where a policy of life insurance provides that if the premium is not paid when due, the insured may have three months thereafter within which to elect between options, as to how the cash surrender value of the policy shall be applied, and the insured dies within the three months without having exercised such election, held, the death of the insured automatically extends the policy in force for the full amount thereof, for such a period of time as the cash surrender value of the policy would purchase.

**3. Insurance—Policy—Construction Favoring Insured.**

If the policy of insurance is susceptible of two constructions, that one is adopted which is most favorable to the insured.

**4. Same—State Regulation—Invalidity of Discriminatory Provisions of Policy.**

Incorporated insurance companies are creatures of the law, and such corporations doing an intrastate business must conform to the laws of the state, and while the state will not attempt to make contracts for the parties to an insurance contract, but will leave the parties to agree to the terms thereof, the state has the power to say what contracts are enforceable, and in what manner and in what forum they may be enforced, and had the power to protect its citizens from unjust discriminations, and

when the Legislature has spoken through statutory enactment not violative of the Constitution of the United States and of this state, and hereby prohibits unjust discriminations between citizens of the same class, and a contract of insurance is attempted to be made embodying distinctions and discriminations in contravention of such statutes, such discriminatory clause is void and unenforceable.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; William H. Zwick, Judge.

Action by Ross N. Lillard against the Metropolitan Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Embry, Johnson & Tolbert, for plaintiff in error.

Babcock & Trevathan and Charles H. Garrett, for defendants in error.

Opinion by RUTH, C. Plaintiff alleges that defendant issued its policy in the sum of $3,000 to Charlie A. Jollie and on January 6, 1922, while the policy was in full force and effect, the insured died, and the beneficiary of the policy assigned same to plaintiff, Thomas Jollie and Margaret Jollie, minors, by their next friend, intervened claiming the benefits of the policy by reason of being children of the deceased. Ardella Jollie, widow of the deceased, intervened, and alleged Thomas Jollie and Margaret Jollie have no interest in the policy; that she is the sole beneficiary named therein; that she assigned the policy to plaintiff; and prays that the intervening minors take nothing.

The defendant admits the execution of the policy and attaches a copy, that portion of which necessary for the determination of this action being as follows:

"Upon the failure to pay any premium or any part thereof when due, the policy, except as otherwise provided herein shall immediately lapse. If, however, the lapse occurs after three full years premiums shall have been paid, the owner thereof, provided there is no indebtedness hereon, shall, upon written request filed with the company at its home office, together with the presentation of this policy for legal surrender within three months from the due date of premium, be entitled to one of the following options:

"First. A cash surrender value, or the mathematical equivalent thereof, namely:

"Second. To have the insurance continued for a reduced amount of nonparticipating paid-up endowment insurance payable at the same time and under the same conditions as this policy, which paid-up insurance shall have an increasing cash surren-

der value equal to the full reserve at the date of surrender, or a loan value up to the limit of the cash surrender value, with interest payable in advance at the end of the policy year at the rate of six percentum per annum, or

"Third. To have the insurance continued in force for its original amount as term insurance from due date of premium in default, without participation and without right of loan, and if the sum applicable to the purchase of such loan insurance shall be more than sufficient to continue the insurance to the end of the endowment period named in the policy, the excess shall be used in the same manner to purchase nonparticipating paid-up endowment payable at the end of the endowment period on the same conditions as this policy. The extended contract under this option of surrender may be for its full reserve at the date of such surrender.

"The company may in its discretion defer the payment of the cash value period not exceeding 90 days after the application therefor is received by the company.

"If the owner shall not, within three months from the due date of premium in default, surrender this policy to the company at its home office for a cash surrender value or for indorsement for paid-up insurance, as provided in the above options the insurance shall be continued for a reduced amount of paid-up insurance as provided by the second option.

"That the said Charles A. Jollie wholly failed and neglected to pay the premiums on said policy due October 27, 1921, and said policy lapsed for failure of such payment, and no part of said premiums have been paid or tendered; and said policy was not, within three months from the due date of such premium default. presented to the company at its home office for cash surrender value, or for indorsement for paid-up insurance, or term insurance, as provided in the above option; and by reason thereof the liability of the defendant company thereon became and was for $482 continued insurance for five years. nine months and eight days from October 27, 1921, which amount this defendant tenders into court and offers to pay to the person entitled thereto."

Plaintiff for reply alleges the premiums were fully paid at the time of the death of the assured; that defendant had money in its possession belonging to deceased in a sum more than enough to pay the premiums. and the policy never lapsed: that it was the custom of deceased to have the dividends earned by his policy applied in payment of premiums due, and the defendant had an amount of earned dividends in its hands sufficient to pay the premiums, and it was the defendant's duty to so apply them; that the company never notified the in-

sured of the amount of the dividends distributable, and the insured never notified the defendant to make any payment, application or distribution of the earned dividends other than to apply them to premiums due and to become due on said policy.

Plaintiff avers Charles A. Jollie, his beneficiary or her assignee, did not have possession of the policy within three months after October 27, 1921, but the same was concealed from them, and they did not know the contents thereof until a copy was filed as an exhibit to the defendant's answer and if the policy did lapse on October 27, 1921, for failure to pay the premiums, which plaintiff denies, still Charles A. Jollie died within less than three months from October 27, 1921, and within the time in which the option provided for in said policy of insurance to the owner thereof, to apply or dispose of its cash value, might have been exercised; that neither the beneficiary nor the assignee had any knowledge of the option clauses, and having been denied possession of the policy, they were unable to exercise an option or present the policy at the home office of the defendant for legal surrender or indorsement within three months from October 27, 1921, and the plaintiff has elected and hereby elects to exercise the third option provided for in said policy of insurance, viz, to have the insurance continued in force for its original amount as term insurance from the due date of the premium alleged to be in default, for the period of time which the sum applicable for the purchase of such insurance will pay for, and that the sum applicable for the purchase of such insurance was sufficient to pay for the same for a term of more than three months after the 27th day of October, 1921, and further, where the death of the insured occurred and the liability of the defendant under said policy of insurance for such death was incurred within the period provided for in such policy for the exercise of such option, it will be presumed that the beneficiary or owner of said policy would exercise the option most favorable to him or her if the opportunity to exercise the same had existed, and plaintiff avers that the third option above mentioned is the one most favorable to the owner of said policy of insurance under the facts in this case as set forth in the pleadings herein and the plaintiff was unavoidably prevented from exercising said third option within the time limited by reason of the facts herein set forth.

Defendant in its amended answer alleges that in June, 1921, at the expiration of the fourth year, the policy had a loan value of $144 and Charles A. Jollie borrowed this

sum from defendant on the policy, and on June 6, 1922, there was due the defendant on the said loan $147.28, and the cash surrender value of the policy was $175.50, and deducting the $147.25 therefrom, left $28.22, and that such deduction reduced the term insurance under the options of such policy to the sum of $480.

Margaret and Thomas Jollie replied that they were minors under the age of 14 years and were incapable of exercising any option.

A stipulation was filed and made a part of the record, wherein it was agreed that in the event of recovery, the plaintiff should recover one-half and the minor children one-half of the amount so recovered. A jury was waived and the cause tried to the court, and findings of fact and conclusions of law requested, and were so made and filed, and it is unnecessary to set the same out in full, but it is sufficient to state the court found that the sum of $28.22, being the net cash surrender value of the policy at the time of its alleged lapse, purchased the continuation of the policy for a term of four months and eleven days, and therefore the policy was in full force and effect for the original amount at the time of the death of the insured.

There were two policies sued upon, one for $3,000 and one for $2,000, and the court found there was no lapse in the $2,000 policy, and we are advised this sum has been paid. The court found, as a conclusion of law, that the policy making a distinction between options allowed persons insured under such policies, that is, if there was no indebtedness against the cash surrender value, the insured had the right election between three options but if there was an indebtedness against the cash surrender value, he had no option or choice, was contrary to the provisions of the statutes of the state of Oklahoma, and against public policy and unenforceable. There being no contest over the $2,000 policy, judgment was entered for the sum of $2,000 on the one policy, and $3,000 on the other policy, with interest from March 7, 1922 and from the judgment on the $3,000 policy, defendant appeals and presents 18 specifications of error which it argues under three heads, viz.:

"(1) The judgment is not supported by the facts as found by the court. (2) The judgment is not supported by the evidence. (3) The judgment is contrary to law."

It is admitted in this case that on the date of the alleged lapse of the policy, October 27, 1921, the cash surrender value of the policy was $175, and the deceased had borrowed $144 thereon, which, plus interest amounted to a total of $147.28, and it is further admitted that the net cash surrender value of the policy was $28.22, and the only question in this case is, whether the beneficiary and her assignee have the right to insist that this sum be applied to keeping the policy in full force and effect for the sum of $3,000, as was the privilege of one who had not borrowed on the policy, and which would have kept the policy in full force and effect for the full sum of $3,000 for a period of four months and 11 days from October 27, 1921, or until March 7, 1922, and as the insured died January 6, 1922, the policy under this option would have been in full force and effect at the time of the death of the insured; or whether the beneficiary or her assignee is compelled to take under the option offered and contended for by defendant, that the said sum paid for a term insurance under the options of the policy in the sum of $482 for a period of five years, nine months, and eight days, unless the insured should, as he did, sooner die.

Under the defendant's theory, if the insured had not borrowed from the defendant, the cash surrender value of his policy would have continued the policy in full force and effect for the sum of $3,000 for approximately 821 days, and if the surrender value had been $28.22 and he had not borrowed thereon, it would have continued in full force and effect for the full sum for a period of four months and 11 days, but by reason of the necessitous condition of the insured, he was compelled to borrow, and by reason thereof, he is denied the privilege of exercising this option. Is this a discrimination against one of a class of insured? Is it against public policy and contrary to the provisions of the statutes of this state? Section 6721, C. O. S. 1921, provides:

"No life insurance company, association or corporation doing business in this state shall make or permit any distinction or discrimination in favor of insurants (the insured) of the same class and equal expectation of life in the amount· of payment of premium or rate charged for the policies of insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contract it makes."

If we take A. and B., both being in the same class with the same life expectancy, and write their policies at different times, and on October 27, 1921, A.'s policy has a cash value of $28.22, and A. is a borrower and B.'s cash surrender value is $28.22, and he is not a borrower, certainly the insurer suffers no greater loss or assumes any greater risk by extending to A. the privilege of the same options extended to B. for the same

amount of money. The insured are in the same class as contemplated by the statute, and a distinction is made between A. and B. and a discrimination in favor of B., and contrary to that provision of the statute prohibiting distinctions or discriminations against any insured "in any of the terms and conditions of the contract."

Section 6731, par. 7, C. O. S. 1921, provides:

"That after three full years' premiums have been paid, the company, at any time, while the policy is in force, will loan on the execution of a proper note or loan agreement by the insured and on proper assignment and delivery of the policy, and on the sole security thereof, at a specified rate of interest, a sum equal to or at the option of the insured less than the reserve at the end of the current policy year on the policy and on the dividend additions thereto, if any (the policy to specify the mortality table and rate of interest adopted for computing such reserve) less a specified percentage (not more than two and one-half) of the amount insured by the policy and of the dividend additions thereto if any, and the company will deduct from such loan value any existing indebtedness on or secured by the policy and by any unpaid balance of the premium for the current policy year, and may collect interest in advance of the loan to the end of the current policy year. Provided, that such loan may be deferred for not exceeding six months after the application thereof is made. No condition other than as herein provided shall be executed as a prerequisite to any such loan."

Section 6759, C. O. S. 1921, provides for the revocation of the license of any agent, * * * company, etc., to do an insurance business in this state, for a violation of the statutes, and prescribes other penalties, and when a company applies for and obtains a license to write insurance in this state its continued business in this state is contingent upon its observance of the state laws.

Not alone does the clause, contended for in the policy under review, discriminate against the borrower simply because he is a borrower, in contravention of the statutes, but as a prerequisite to obtaining a loan on the policy, the insured is required to surrender and waive the right he would have had upon the lapsing of the policy, if there had been no indebtedness against it, to have it continued in force for the full amount of $3,000, for such length of time as the net cash surrender value would pay for, since the loan automatically makes the indebtedness clause apply and places a burden or condition upon the borrower which does not exist as to the nonborrower, notwithstanding section 6731, supra, relating

exclusively to loans upon policies specifically provides that, "no condition other than as herein provided shall be exacted as a prerequisite to any such loan"; and it necessarily follows that any policy containing a provision or imposing a condition for obtaining a loan, in contravention of the express words of the statute, renders the clause of the policy containing such contravening condition void and unenforceable.

Defendant cites but eight cases in its brief in an effort to sustain its contention, not one of which is from this state, and this particular clause of the policy does not appear to have been passed upon in this jurisdiction, and but one of the cited cases appears to be at all analogous to the case under review.

In Rye v. N. Y. Life Ins. Co. (Neb.) 130 N. W. 434; Dibrell v. Citizens Nat. Life Ins. Co. (Ky.) 153 S. W. 428; Jagoe v. Aetna Life Ins. Co. (Ky.) 96 S. W. 598; Meridian Life Ins. Co. v. Hobbs (Ala.) L. R. A. 1918A, 904, cited by defendant, the full amount of the cash surrender value of the policy had been borrowed by the insured and there was no balance to apply to the continuation of the policy in force for the full amount or any other amount, and any finding by the courts in those cases cannot be persuasive on this court in the instant case.

In Francis v. Prudential Ins. Co. (Pa.) 90 Atl. 205, the insured had obtained a loan on his policy, leaving a cash surrender value of $86.27, and this sum continued the full amount of his policy in full force and effect for 308 days, and terminated March 1, 1905, and the insured did not die until almost four years after that date, while in the instant case the balance of $28.22 was sufficient to purchase insurance in the sum of $3,000 for a period of four months and 11 days from October 27, 1921, and the insured died within two months and ten days from that date.

In Black v. Franklin Life Ins. Co. (Ga.) 67 S. E. 79, the policy sued upon contained no such option clause as presented here. In the cited case the clause in the policy with reference to the application of the sum of the cash surrender value of the policy automatically extended the full insurance for the period the net cash surrender value would buy.

We have carefully considered each case cited by defendant, and the only case at all analogous to the instant case is Rustin v. Aetna Life Ins. Co. (Neb.) 153 N. W. 548. Defendant does not direct our attention to any Nebraska statute regulating insurance contracts, and the opinion fails to cite any statute of that state, and an examination

of the Nebraska statutes fails to disclose any statute of that state analagous to sections 6721 and 6731, C. O. S. 1921, heretofore cited and quoted.

In N. Y. Life Ins. Co. v. Noble, 34 Okla. 103, 124 Pac. 1912, this court said:

"The policy contained an automatic nonforfeiture clause which provided, in substance, that if any premium should not be paid when due, the premium should be charged against the policy as a loan, and if the loan value of the policy was not sufficient to pay the total premium due, it should be applied on payments of the premium and extend the policy for a shorter period of time. On September 7, 1908, the premium was due and unpaid, and the policy of said date had a loan value of $320. It then became the duty of the company under the automatic nonforfeiture clause, to apply the $320 to the payment of the premium, which would extend the policy with a paid-up premium for approximately nine months, and deceased having died within that time, the $320 would fully pay up and extend the policy. Held, the policy was in full force and effect at the time of the death of the insured, and the beneficiary thereof is entitled to recover the amount of the policy, less the amount chargeable against the policy as a loan."

Defendant requested the court to make the following finding:

"That after the lapse of such policy, and the failure of the insured and the owner of the policy to elect the option which they would take, the defendant company, in order that the beneficiary might be given the advantage of the most favorable option, carried by the policy in the sum of $482 as a term insurance under the third option, and no more; which value was arrived at by deducting the total indebtedness on October 27, 1921, of $147.28, from the then cash surrender value of $175.50 which left $28.22 of the cash surrender value available to the insured, which paid for $482 term insurance."

Such a finding would not have been warranted by the facts for the following reasons:

(1) It would have been a finding that the policy had lapsed, when as a matter of fact there remained in the possession of the defendant sufficient money to continue the policy for a period of four months and eleven days from October 27, 1921.

(2) It would have been a finding that the insured and the owner of the policy had failed to elect the option they would take, whereas the record discloses the policy provided such election might be made within three months after the last due date of an unpaid premium, and as the insured died within two months and ten days after such last due date, the beneficiary was not in possession of the policy and did not know

of its contents within the three month's period.

(3) It would have been a finding that the term policy continued for four years, nine months, and eight days in the sum of $480 was the most favorable option to the beneficiary.

This would have been true had the insured died after the lapse of four months and 11 days, and within five years, nine months, and eight days, but having died within two months and ten days, it is obvious the continuation of the policy in the full amount the cash surrender would buy, was the most favorable option to the beneficiary, and it is presumed the beneficiary will elect to take such option as is most favorable to him or her at the time of making the election.

If any doubt existed as to the right of the insured to have the $28.22 applied to the extension of the policy for the full amount, under the terms of the policy when read in connection with the statutes of this state, supra, the doubt must be resolved in favor of the insured.

"If a policy of insurance is susceptible of two constructions, that one is to be adopted which is most favorable to the insured." Taylor v. Ins. Co. of North America, 25 Okla. 92, 105 Pac. 354, 138 Am. St. Rep. 906; Federal Life Ins. Co. v. Lewis, 76 Okla. 142, 183 Pac. 795; Standard Accident Ins. Co. v. Hite, Admr, 37 Okla. 305, 132 Pac. 333.

The issuance of a policy of insurance is but a contract between the insurer and the insured, and while the state will not attempt to make contracts for the parties, but will leave the parties to agree to the terms thereof, the state has the power to say what contracts are enforceable and in what manner and in what forum they may be enforced. It also has the power to protect its citizens against unjust discriminations, and when the Legislature of the state has spoken through statutory enactment, not in violation of the Constitution of the United States or of this state and when a statute is adopted prohibiting discriminations against citizens in the same class, and a contract of insurance is attempted to be made, embodying distinctions and discriminations in contravention to such statute, such discriminatory clause is void and unenforceable. Incorporated insurance companies are creatures of the law, and corporations doing an intrastate business must conform to state laws, and the statutes of this state hereinbefore set forth, having provided that with respect to loans on insurance policies, no conditions other than in the statute provided shall be exacted as a prerequisite to such loan, a clause making the waiver or

surrender of certain rights by a borrower, and denying him the same rights of election of extension of his policy as are extended to the nonborrower, are in contravention of the statute, against public policy, and unenforceable, and the borrower will be accorded the same privilege of election as the nonborrower.

For the reasons herein stated tne judgment of the trial court in all matters is hereby affirmed

By the Court: It is so ordered.