### GREAT SOUTHERN LIFE INS. CO. v. JONES (two cases).*

Circuit Court of Appeals, Eighth Circuit. September 30, 1929.

Nos. 8387, 8388.

*Rehearing denied December 16, 1929.

Bailey & Hammerly, of Chickasha, Okl., for plaintiff.

Embry, Johnson & Tolbert, of Oklahoma City, Okl., for defendant.

Before LEWIS and VAN VALKEN-BURGH, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge. Nina Bell Jones, widow of Walter Jones (now Kennedy), appellee in No. 8387, appellant in No. 8388, plaintiff below, and referred to here as plaintiff, brought this action in the state district court of Grady county, Okl. It was removed to the District Court of the United States for the Eastern District of Oklahoma. She sues as beneficiary on an insurance

policy for $5,000 on the life of her deceased husband, dated December 24, 1910, issued by the Oklahoma National Life Insurance Company, and later assumed by the defendant, the Great Southern Life Insurance Company. The policy called for the payment of 20 annual premiums of $205.80 each, including the first, or until the prior death of the insured. Eleven annual premiums were paid, continuing the policy in force until December 24, 1921. No premiums were paid thereafter. The insured died March 28, 1924, as the result of bodily injuries effected exclusively by external, violent, or accidental means.

The policy contained a double indemnity clause providing:

"In the event of the death of the Insured by bodily injury effected exclusively by external, violent, or accidental means, and occurring within 90 days after such injury, the amount payable hereunder, as above, shall be $10,000.00 Ten Thousand Dollars."

The action is to recover as for extended insurance under one of three provisions providing, (1) that upon failure of the insured to pay such premiums he became entitled to the cash surrender value; or (2) a nonparticipating paid-up life policy for a lesser amount and for a definite time; and (3) that, without action on the part of the insured, the first amount mentioned in the policy, $5,000, would be extended for a given time, stated in the table of guaranteed values, if policy in each case was free from indebtedness.

In July, 1921, and about five months before the expiration of the date that premiums were paid to, the insured borrowed the full loan value of the policy, $1,450. Interest on this loan was paid until December 24, 1921.

Attached to and forming a part of the policy were 19 guaranteed dividend coupons, discussed later, called "Premium Reduction Coupons."

A jury was waived by written stipulation, and all questions of fact and law submitted to the court, which made certain findings of fact and conclusions of law.

The court found, among other things, that the premium reduction coupons on December 24, 1921, had a then guaranteed cash value of $425.50 due the insured at the time of his death; that defendant had in its possession on said date sufficient funds—together with the increased values or increments to said policy during its continuation—which, if applied to continuing said contract in force, would have extended the same beyond the death of the insured; that its value at the time of default in payment of the twelfth annual premium, less the amount of the loan to the insured, was sufficient to continue the policy in effect for its face value for a period of more than six years on the basis of term insurance at the then age of the insured; that the defendant never canceled, and did not seek to cancel, the policy or declare it forfeited for nonpayment of premiums during the life of the insured; that the insured during his lifetime borrowed and withdrew the whole of the reserve and cash surrender value, and at the time of default in premium payment his indebtedness to the company equalled the reserve and cash surrender value, leaving nothing to pay for extended insurance, unless, as claimed by the plaintiff, the value of the premium reduction coupons, $425.50, were applicable to the automatic extension of the insurance.

The plaintiff and the defendant each moved for judgment upon the findings of fact and conclusions of law of the court. The motion of plaintiff was granted and judgment rendered in her favor for $3,550, with interest, being the face value of the policy, less the amount of the loan secured thereby.

The defendant, appellant in 8387, asserts here, as it did in its answer, that only the amount of the matured coupons, to wit, $425.50, is due; which amount it has in its answer offered, and now offers, to pay with interest as an obligation separate and distinct from the insurance, but it denies that this sum could or should have been used to buy up additional or extended insurance under the automatic extension clause.

The plaintiff, appellant in 8388, assigns as error the refusal of the court to permit recovery under the double indemnity provision. The one record is certified for both appeals.

Two questions are presented for our consideration: First, whether the so-called premium reduction coupons extended the insurance, as found by the lower court, and second, if so, did they extend it for $5,000 only, the first item in the policy, or for $10,000, in accordance with the double indemnity provision?

First. It is admitted by the defendant company in its brief that each premium is made up in part of a charge for these coupons, in addition to the carriage risk of the insurance.

In Metropolitan Life Ins. Co. v. Lillard, 118 Okl. 196, 248 P. 841, the Supreme Court of the state in a similar situation deducted the indebtedness from the cash surrender value of the policy, and then applied the balance, the net surrender value, as one premi-

um in extending the whole policy for the time that such premium would pay for. If we apply that rule to the case at bar, there is nothing left to extend the insurance, unless the premium reduction coupons are held to be available for that purpose.

■ One coupon matures annually in turn, as long as the premiums are paid. Each is a promise by the company that it will pay the insured the amount stated therein. The policy provides that they may be used by the insured in any one of five ways; that is, by applying each coupon as it became due on the annual premium, by paying all premiums in full, and leaving with the company the amount represented by the coupons as they mature, in which event the policy became fully paid in 14 years, by paying all premiums in full, without reduction, for 20 years, in which event the insured would be entitled to select from certain optional settlements offered; that the amount of the coupons left with the company be payable at any time on presentation; and, lastly, in the event of the death of the insured, the amount of the coupons not then cashed or surrendered would be added to the face value of the policy.

They contain no other limitations, and the sums payable thereon may very properly be called dividends. Webster's Unabridged Dictionary; Corpus Juris 18, p. 1406. This term as used in insurance law has no narrow, technical signification, and is flexible enough to meet any state of facts. Clearly the face value of each coupon—unless cashed or applied on the premium—must be set aside annually by the company and held to the credit of the insured, subject to his demand, and constitutes dividends, irrespective of the designation given them in the policy.

■ The insurance company in seeking to declare a forfeiture comes within the inhibition of the following well-established rule:

"The rule has been broadly laid down that a life insurance company cannot insist upon a forfeiture for the nonpayment of a premium, where it has in its possession dividends belonging to the insured sufficient to pay the premiums at maturity." 19 Am. & Eng. Cyc. of Law (2d Ed.) p. 50.

And in C. J. vol. 32, p. 1308, the rule is stated in almost identically the same language, while in 37 C. J. 486, it is said the insurance company must use any funds in its hands due the insured to avoid a forfeiture. Another statement of the rule is found in the case note to Caywood v. Supreme Lodge, 171 Ind. 410, 86 N. E. 482, 23 L. R. A. (N. S.) 304, 131 Am. St. Rep. 253, 17 Ann. Cas. 503, to wit:

"It may be laid down as the general rule, gathered from the cases reviewed in this note, though subject to some exceptions, as will be hereafter seen, that, if an insurer has in its hands sufficient funds presently due the insured to pay an assessment or premium upon his policy when due, it is the former's duty to apply the same so as to prevent a forfeiture of the policy."

■ The extent to which courts will go to avoid a forfeiture of an insurance policy for failure to pay premiums is well illustrated by the discussion and authorities cited in the late case of Lincoln Nat. Life Ins. Co. v. Bastian (C. C. A.) 31 F.(2d) 859. And that, as forfeitures are to be avoided, a construction should be adopted that is most favorable to the assured, see Pilot Life Ins. Co. v. Owen (C. C. A.) 31 F.(2d) 862, at page 866. That ambiguous or doubtful language of insurance policies will be taken most strongly against the insurer, see Gits v. New York Life Ins. Co. (C. C. A.) 32 F.(2d) 7.

■ The insurance company contends that the policy in the instant case is a nonparticipating one, producing no dividends, and that the automatic extension clause, paragraph IV, refers only to the value $1,450 found in the table of guaranteed values; that this extension sum, being definite in amount and time, cannot be increased by the addition thereto of the coupon values, because paragraph IV does not refer to coupon values, so that this $1,450 is the only resource for the purchase of extended insurance upon failure to pay premiums, and that this amount was here required to pay the indebtedness against the policy. We are unable to find, however, that any such an exception has ever been made, even in the absence of statute. The courts follow almost unanimously the rule and canons of construction indicated above. The authorities cited in defendant's brief, as well as plaintiff's, are to the same effect.

■ But, irrespective of that, this argument runs counter to the statutes of Oklahoma. Section 6731, Comp. St. Okl. 1921, specifically provides that, in the event of the default in premium payments, after premiums have been paid for three years, the insured should be entitled to a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy, and on dividend additions thereto, if any less any existing indebtedness to the company. So the cash reserve on the policy being sufficient to pay off the loan, the $425 due on the premium reduction coupons, which we regard as dividends, must, according to this section, be applied to purchasing

an extended policy for $5,000. If this was done, the policy would have been extended for a period of more than six years at the then age of the insured and beyond his death, according to the uncontradicted testimony.

Another argument advanced by counsel for the insurance company is that these premium reduction coupons are governed by provisions contained in the policy, separate and distinct from the insurance feature of the contract, and accordingly, when the insured failed to pay his premiums, and did not avail himself of the option to apply the coupons to the payment of premiums, he breached this particular contract, and equity will not afford him relief. But, as only one premium was charged as a consideration for all the obligations assumed by the insurer, we think the policy constitutes but one agreement and must be considered as a whole.

The defendant requested the court to find: "That paragraph IV of the policy sued on, providing that, 'should insured fail to pay any premium hereon, after one full annual premium has been paid, this policy without any action on the part of the insured will be extended for the sum first named herein, for the period of time designated in column four of the Table of Guaranteed Values, * * * if the policy be free from indebtedness at the time of default, * * *' relates to the automatic extension of this insurance." This means, when there is a loan secured by the policy, as in the instant case, that only the surplus or excess of the cash value, as shown in the tables, if any, after payment and deduction of such indebtedness, is applicable to the purchase of extended insurance, and that, since the indebtedness in the instant case was equal to such cash or loan value in December, 1921, there was no surplus applicable for the purchase of extended insurance, and no automatic extension thereof.

We think the court was right in refusing to so find. Such a provision attempting to limit the automatic extension provision to policies on which there is no indebtedness is contrary both to the statutes of Oklahoma and the great weight of authority. In Metropolitan Life Ins. Co. v. Lillard, supra, the Supreme Court of Oklahoma held that no distinction in the benefits accruing to a policyholder could be made merely because the insured had borrowed upon his policy; that it amounted to, discrimination against one of a class of insured, and was therefore against public policy and contrary to the provisions of section 6721, Comp. St. Okl. 1921, forbidding any distinctions or discriminations in favor of insurants of the same class and equal expectancy of life in respect to the amount of premiums and rates charged, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contract. If there were any doubt of this, it must be resolved in favor of the insured under the authorities cited above. See, also, Mutual Life Ins. Co. v. Henley, 125 Ark. 372, 188 S. W. 829, and cases there collected; also 37 C. J. 511. It is well settled that statutory provisions are a part of the policy.

"The courts appear to be unanimous in holding that, as to those policies to which the statute is applicable, the statutory provisions ought to be given the same force and effect as if they were written in fact in the policy." 14 R. C. L. § 164, p. 990; Equitable Life Assur. Soc. v. Babbitt, 11 Ariz. 116, 89 P. 531, 13 L. R. A. (N. S.) 1046.

Second. That there is no merit in the plaintiff's appeal (8388) requires no argument. The contract specifically provides that the special benefits, of which the double indemnity clause is one, are not available to the insured or the beneficiary when there has been default in payment of premiums and the policy is in force by virtue of the automatic provisions of paragraph IV.

The judgment of the lower court is affirmed.