No. 26,255.

CLAUDINA FONTANA, in Her Own Behalf and as Guardian of the Persons and Estates of MIKE FONTANA and JOSEPH FONTANA, Minors, *Appellee* and *Appellant,* v. INTEGRITY MUTUAL CASUALTY COMPANY, *Appellant* and *Appellee.*

SYLLABUS BY THE COURT.

1. INDUSTRIAL INSURANCE—*Action on Policy Contract—Pleading—Evidence.* In an action to recover on a contract of industrial insurance, the pleadings, policy contract and the evidence considered, and held sufficient to sustain plaintiffs' cause of action.

2. SAME—*Construction of Policy—Admissibility of Parol Evidence.* Where by the terms of a policy of industrial insurance an arbitrary and unusual meaning was given to the terms "employer," "employee" and wage "pay rolls," which manifestly did not accord with the usual use of such nomenclature, parol evidence was proper to show the intention of the parties and the operative interpretation given to such terminology by the parties concerned.

3. SAME—*Construction of Policy—Persons Covered.* Where defendant issued a policy of industrial insurance covering an unstated number of unnamed

Appeal and Error, 4 C. J. p. 1147 n. 59. Industrial Insurance, 31 C. J. pp. 967 n. 17, 970 n. 7, 974 n. 98.

Fontana v. Integrity Mutual Casualty Co.

coal miners, receiving a monthly premium therefor based upon the number of workmen actually employed in the coal mining industry covered by the insurance contract, a coal miner who regularly paid the monthly premium which was accepted and retained by the defendant was protected by the insurance contract.

4. SAME—*Construction of Policy—Procedure for Ascertaining Liability.* Although the policy of industrial insurance stipulated that the extent of the insurance company's liability should be based upon the allowances for industrial accidents and deaths under the workmen's compensation act, and that the provisions of that act should govern as far as practicable, it was not error, in an action to recover on such insurance contract, to omit the procedure of arbitration designed peculiarly for controversies actually arising under the compensation act.

5. SAME—*Action—Instructions.* The instructions examined and held to be without material error.

6. NEW TRIAL—*Grounds—Limitation of Issues.* Matters presented on cross appeal considered, and *held,* that no prejudicial error in directing a new trial is discernible, but *held,* also, that such new trial should be limited to a determination of the amount of defendant's liability in favor of plaintiffs.

Appeal from Crawford district court, division No. 2; GEORGE F. BEEZLEY, judge. Opinion filed March 6, 1926. Modified and affirmed.

*C. O. Pingry, P. E. Nulton* and *G. L. Stevenson,* all of Pittsburg, for the appellant,

*Phil Callery, J. E. Callery, Sylvan Bruner, Caroline A. Lowe, C. S. Denison* and *E. V. Bruce,* all of Pittsburg, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover on a policy of industrial insurance. The defense was that the deceased was not within its terms.

The controlling facts were these: One J. H. Vincent, lessee of some coal lands in Crawford county, operated these coal lands by subletting parcels of them to a number of small mining firms, one of which was the Boone & Monahan Coal Company. This firm sold its interest to Joe Fontana and three other men, who were miners by trade, and these four took over the sublease from Boone & Monahan. They named their business venture "The North Side Coal Company." Their methods of operation were these: They worked the mine themselves and turned over the coal which they dug to J. H. Vincent, who sold it for the benefit of all concerned. The four mining partners each drew four dollars per day as for wages, which

was paid out of the proceeds of the coal mined by them and sold by Vincent. The balance was disposed of pursuant to their contract, and the proceeds disbursed to pay royalties, commissions, insurance premiums, and miscellaneous expenses. Fontana and his three fellow workmen or partners were to share in the net profits, but of these there was none to divide.

The defendant issued a blanket policy of insurance covering all officers and employees of these small mining concerns operating on Vincent's coal lands. It was labeled "Universal Compensation Policy," and was dated August 1, 1922, at which time the Boone & Monahan Coal Company held the sublease which Fontana and his three partners took over in October, 1922. The policy was manifestly one for use in insuring the workmen of an employer engaged in some industry in which the workmen's compensation act would be applicable. The insurance allowances and the circumstances under which they would be payable were mainly in accord with that statute. The policy designated Vincent as the "employer," and the persons who were to be insured against injuries or death were designated "employees," and the amount of the insurance premiums to be paid to the defendant monthly were to be based on Vincent's book accounts with his sublessees which were called "pay rolls," and which were to be open to defendant's inspection. Vincent was in no proper sense an employer of his sublessees, nor were Fontana and his partners or the other groups of miners who subleased and mined coal on Vincent's lands in any proper sense the employees of Vincent, nor were the books of accounts showing the amount of coal dug by Fontana and his fellows and their per diem of four dollars each taken from the gross proceeds of the coal so dug by Fontana and the other miners in any proper sense a pay roll of wages paid by Vincent to Fontana and his fellow workmen, but such was the rough and ready operative interpretation of the contract of insurance placed upon it by all parties concerned. Vincent collected the proper monthly premium from Fontana and his partners, and remitted the premiums each month to defendant, less an agreed deduction allowed him as a fee for collecting the monthly premiums due from Fontana and his fellow workmen and from the similar groups of workmen mining coal under like arrangements with Vincent. The specified premium rate for insuring miners like Fontana was $2.60 for every $100 of pay, and the monthly premium for the estimated number of workmen insured as Vincent's "em-

ployees" was $280, which had to be paid in advance; and it was also stipulated that the aggregate monthly premiums should not be less than $100. Advance premiums were exacted by Vincent from the groups of sublessees operating on his coal lands in proportion to the number of men employed in each of such undertakings. Thus Boone & Monahan had contributed $35 as their proportionate share of such advance premium, which sum was refunded to them and replaced by a similar sum contributed by Fontana and his partners when they took over the mining venture of Boone & Monahan. To further illustrate the operative interpretation of this contractual arrangement: Vincent notified the defendant that changes in the personnel of the workmen were continually going on in his coal fields, and the defendant directed that as he knew who the workmen were he could keep tab on such changes better than the insurance company, and that he should go ahead and collect the proper amount of premiums from these workmen whoever they might be and remit, less his charge of 25 cents per $100 for collection. On two or three occasions the company's representative audited Vincent's "pay rolls," according to its privilege by the terms of its contract. These audits included the coal, wage and expense accounts of the dealings of Vincent and Fontana and Fontana's fellow workmen.

While this insurance arrangement was in operation, and while Fontana was at work in the coal mine operated by him and his partners, he received injuries which caused his death.

The defendant denied liability. Hence this lawsuit, which culminated in a verdict and judgment for Fontana's widow and children for $3,915. Defendant filed a motion for a new trial on various grounds, all of which were overruled; but the court held that the verdict was excessive to the extent of $1,173. The court also found "that such verdict was not given under the influence of passion and prejudice," and held that a new trial should be granted unless plaintiff elected to remit $1,173 from the amount of the verdict. Plaintiff declined to remit, and a new trial was ordered.

Both parties appeal. Defendant urges a review of a characteristic list of trial errors, and plaintiff's cross appeal pertains to the granting of a new trial on the single ground specifically made the basis therefor by the trial court—the excessiveness of the verdict.

Touching the matters urged on our attention by defendant, it argues, first, that since plaintiff's petition did not allege facts justify-

ing a reformation of the policy and no reformation was prayed for, evidence to prove an oral contract at variance with the terms of the written instrument was inadmissible, and consequently plaintiff's cause of action was not established by competent evidence. But in this case the policy of insurance, without parol evidence to explain it, was meaningless. It designated Vincent as employer and the persons mining coal on his lands as his employees when he was merely the lessor of coal lands and the marketing, accounting, and disbursing functionary for his sublessees. He was also agent for the defendant insurance company to collect from his sublessees the monthly premiums due from them as insured workmen, and he was the paid agent of the defendant to remit these premiums to it. The policy characterized these sublessee miners as Vincent's employees, and characterized Vincent's books of account with these sublessee miners as pay rolls. The amount due defendant and received by it as monthly premiums was based on the number of sublessees, including Joe Fontana, who were on Vincent's so-called pay rolls, and these pay rolls were audited by defendant to satisfy itself that it was receiving the proper aggregate of premiums for the number of insured miners operating as sublessees on Vincent's coal lands. It seems perfectly clear that if the insurance policy did not insure Joe Fontana, the policy was altogether a nullity; there was no other class of workmen covered by its pretended protection; and defendant was exacting a monthly tribute of from $100 to $280 from Fontana and others mining coal on Vincent's lands, which monthly tribute was altogether without consideration. We can give no countenance to such a construction of the insurance contract. Whether because of its manifestly ambiguous and equivocal verbiage, or to show its operative interpretation by the parties thereto, including defendant, the parol evidence adduced by plaintiff was competent and quite sufficient to maintain the cause of action. (*Swaller v. Milling Co.*, 116 Kan. 329, 333, 334 and citations, 226 Pac. 1001.)

This conclusion virtually disposes of defendant's contention that plaintiff failed to prove that Fontana became a beneficiary of the policy issued to Vincent when he and his fellows took over the coal diggings of Boone & Monahan. If not otherwise proved, it was clearly established by ratification. Defendant regularly received the monthly premium exacted from Fontana and his three fellow workmen. It was quite content to accept premiums from them instead of the unnamed persons constituting "Boone & Monahan

Company" their predecessors as sublessees of Vincent. It is useless for defendant to argue that its agent at Pittsburg and Vincent had no authority to collect premiums. They did collect the premiums and defendant received the money. It still has the money, and apparently the idea has never occurred to it that it should have refunded the premiums received from Joe Fontana if their collection was wholly unauthorized and if Fontana was not within the protection afforded by its blanket "universal compensation policy."

The next point urged by defendant is the unique one that since the insurance which it afforded was based upon the standard of liabilities attaching to compensable casualties under the workmen's compensation act, defendant stood on the same footing as an actual employer of workmen and as such was entitled to have the question of the amount of compensation and similar issuable facts determined by arbitration as prescribed by the workmen's compensation act. One sufficient answer to this point, out of several obviously available, is that defendant did not ask for arbitration.

Appellant also complains of the instructions. These are too long for reproduction. They state, in substance, that although the name of Joe Fontana or the North Side Coal Company did not specifically appear in the insurance policy issued to Vincent, yet if Fontana paid the insurance premium to Vincent and if Vincent was authorized to accept it, and if it was so paid and remitted to and retained by defendant, Fontana was within the protection of the policy. This rule of law was developed at length in the instructions and it was not erroneous under the facts and circumstances of the case.

The other matters urged by defendant have been carefully noted, but need no discussion. Nothing prejudicial to defendant is disclosed in the record. But before passing to the cross appeal, it may be well to observe that the court is not sure that appellant is entitled to the review we have just accorded it, as it asked and obtained a new trial. It is true, however, that every ground for a new trial urged by defendant was overruled and its motion denied. The trial court, *sua sponte*, ordered a new trial because of excessive verdict. And that point leads to a consideration of plaintiff's cross appeal.

Was there any evidence to support the trial court's finding that the verdict for $3,915 was excessive? While it is true that there was some testimony that the scale of wages was $7.50 per day, yet it did not appear that workmen in that locality had been employed and

paid on that basis. Fontana and his fellow workmen drew $4 per day out of the gross sales of the coal mined by them and marketed by Vincent, and they were also entitled to whatever net surplus over proper deductions and expenses there might be in the sales of their coal; but there was no surplus, no profit, and so we can see no other basis for computing the insurance than by considering $4 per day as the prevailing wages, or as the substantial equivalent of wages, earned by the miners who dug coal on Vincent's lands under the arrangements set out above. Moreover, there may have been certain features of the evidence which would have warranted a verdict of $3,915 if the trial court had given it credence, but which would justify no more than $2,742 on evidence to which the trial court gave credence. Such a situation would warrant the court in giving the plaintiffs the option of a *remittitur* or a new trial, under the circumstances. As the matter stands we are impelled to fall back on our general rule that where there is no plain, palpable, prejudicial error in a ruling or judgment of a trial court, it ought not to be disturbed on appeal. So the order for a new trial will have to stand, but nothing said herein should be construed to bar either plaintiff or defendant from adducing whatever evidence may be available to show what the verdict should be under competent evidence for determining the amount of liability as outlined in the workmen's compensation act. As stipulated in the policy, there may be included also "the proper cost of whatever medical, surgical, nurse or hospital services, medical or surgical apparatus or appliances and medicines, or, in the event of fatal injury, whatever funeral expenses are required by the provisions of such workmen's compensation law."

But there is nothing else to try. The litigants ought not to be put to needless expense of relitigating issues already determined. It has been determined that the deceased was protected by the insurance contract, and it has been determined that defendant is liable. The trial court overruled all defendant's objections based on trial errors in the determination of those issues. This in effect was an approval by the trial court of all that had been determined except the extent of defendant's liability. Regularly or otherwise, defendant has invoked and obtained an appellate review of that ruling, and we can discern no prejudicial error therein of which defendant can justly complain. So the only matter yet to be determined is the amount of defendant's liability. The code authorizes such limita-

McGraw v. Rural High School.

tion of the scope of new trials, and this is a proper case for its exercise. (Civ. Code, § 307, R. S. 60-3004; *Harris v. Drenning,* 101 Kan. 711, 719, 168 Pac. 1106; *Scoby v. Bank,* 112 Kan. 135, 140, 211 Pac. 110; *Bracken v. Champlin,* 114 Kan. 882, 220 Pac. 1027.)

The judgment of this court will be that defendant's appeal is not sustained; and on plaintiff's cross appeal, the order granting a new trial will be modified so as to limit such new trial to a determination of the amount of defendant's liability to plaintiff, and so modified, it will be affirmed.

It is so ordered.