No. 29,376.

ELIZABETH MOHR (MOORE), *Appellee,* v. THE WOMEN'S BENEFIT ASSOCIATION OF THE MACCABEES, *Appellant.*

(289 Pac. 476.)

Opinion filed July 5, 1930.

*Arthur J. Stanley* and *Arthur J. Stanley, Jr.,* both of Kansas City, for the appellant.

*H. E. Dean* and *E. E. Martin,* both of Kansas City, for the appellee and cross appellant.

The opinion of the court was delivered by

DAWSON, J.: This is the second appearance in this court of an action in which a recovery was sought on a policy of fraternal insurance issued by defendant on the life of plaintiff's daughter. *(Mohr v. Woman's Benefit Ass'n,* 127 Kan. 512, 274 Pac. 210.) The facts were sufficiently stated in our first opinion. The cause was tried on the same pleadings, but in this instance the entire defense was centered upon the alleged fraud and false statements made by the insured in her application for membership. No defense was offered on the cause of her death nor on the compromise and settlement of the claim.

As heretofore, plaintiff prevailed before the jury and judgment

was entered in her favor. Defendant appeals, assigning various errors, which will be noted as argued.

We also have a cross appeal to consider. Plaintiff contended at the trial that the defense of false statements in the application was not open to defendant because it had formerly denied liability on another and exclusive ground, which was that the death of the insured had been caused by abortion self-inflicted or consented to by her, which relieved defendant of all liability under the express terms of the contract of insurance. The trial court ruled adversely to plaintiff on this point and this ruling is assigned as error in the cross appeal.

First, concerning defendant's appeal: One of the terms of the benefit certificate was that it was issued upon the express understanding that all statements and representations in the application for membership were warranted as to their truthfulness in every particular, and that breach of any of these would relieve defendant from any obligation under the benefit certificate issued thereunder. The evidence showed without substantial dispute that several statements in the application given by the insured in answer to interrogatories in her application were false. The application, questions and answers, in part, read:

"Application of Irene E. Moore.

.    .    .    .    .    .    .    .    .    .    .    .    .

"For benefit membership in Sunflower Review, No. 1. Located at Kansas City, state or province of Kansas.

"I hereby apply to the Woman's Benefit Association of the Maccabees for a benefit certificate in the amount of $2,000.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Beneficiaries: Elizabeth Moore [Mohr]. Relationship: Mother.

"7. What is your occupation? Girl at home.

"8. Give all places of residence for last five years. Topeka, Kan., and Kansas City, Kan.

.    .    .    .    .    .    .    .    .    .    .    .    .

"20. Have you consulted or been attended by any physician during the past five years? No, none.

"21. Give full name and residence of each physician consulted by you or attending you during past five years. None.

"22. What was the cause for each consultation or attendance? None.

"(a) Date of each illness? None.

"(b) How long ill? None.

.    .    .    .    .    .    .    .    .    .    .    .    .

"32. Have you now or have you ever had any of the following diseases? Answer 'yes' or 'no' opposite each. . . . Pneumonia? No.

.    .    .    .    .    .    .    .    .    .    .    .    .

"46. Have you ever been received or treated in any hospital, retreat or sanitarium? No.

. . . . . . . . . . . . . . . . .

"I hereby waive all benefits under my certificate and agree that it shall become absolutely void if my death shall be caused by abortion or miscarriage produced by myself or any other person with my consent."

(Dated November 19, 1921, and signed by applicant, Irene E. Moore.)

Instead of being a "girl at home," which would have been at her mother's domicile in Great Bend, Kan., the applicant was working in a candy factory in Kansas City, Mo. Instead of residing in Topeka, Kan., and Kansas City, Kan., for the preceding five years, the applicant then was and for an indefinite but considerable time had been a resident of Missouri. The statements that the applicant had not consulted or been attended by any physician in the preceding five years and that she had had no illness and had not been received or treated in any hospital were altogether and grossly untrue. The applicant had been a patient in Stormont hospital in Topeka from January 4 to January 15, 1919. A physician of that hospital testified by deposition thus:

"He [Dr. Munn] has been dead two years. He was on the staff at Stormont hospital, . . . and I was his assistant for ten years. I saw Irene Moore in the hospital. . . . She was his patient and was in the hospital from January 4 to January 15, 1919, and Dr. L. H. Munn was her physician. I saw her in consultation with Doctor Munn and the number of times I saw her was daily.

"She had some lung œdema complication, which is a complication following a moderately severe case of flu or severe bronchitis, or following a severe case of flu there is lung œdema; the diagnosis was flu complicated with lung œdema. The girl was rather young at that time, around sixteen years. . . ."

This testimony could not be capriciously gotten rid of by a jury on the theory that they were not bound to give it credence. This testimony was by deposition, and even if the truth or falsity of the statements in the application were a seriously controverted issue of fact, this court would have its own responsibility in respect thereto (*Record v. Ellis*, 97 Kan. 754, 760, 156 Pac. 712), but plaintiff herself supplied data to the same effect. In her affidavit making proof of death appears the following:

"Give name of residence of each and every physician who has prescribed for or attended deceased during the last five years. Give date when first attended and length of time attended by each physician.

"In 1919 she had pneumonia, at Stormont hospital. Doctor Munn."

The defendant was entitled to be truthfully advised in respect to

all the matters wherein these false statements were set down in the application. Defendant might not want to assume the moral risk of insuring the life of a young girl subjected to the temptations involved in making her own living in a candy factory in a large city several hundred miles from her mother's protection and surveillance; at least, it was entitled to be truthfully informed of the facts so that it could advisedly undertake such risk if so disposed. Defendant was entitled to be advised that the applicant for membership in its society was a recruit from Kansas City, Mo., where, if it was doing business, it would probably have an agent or representative to advise it on the desirability of accepting the application, or defendant might quite appropriately suggest to the girl that she should present her application to its local lodge in Missouri, where she resided. Of still greater obvious importance, however, was the necessity that defendant be truthfully advised touching the girl's illness and of her hospital record in Topeka in 1919. Even if her death was caused by influenza and pneumonia as averred by plaintiff in her affidavit and proof of death, and not as a result of an abortion, the importance to defendant that it should be truthfully advised that the applicant had also been afflicted with that dread disease in 1919 is manifest. Not only did the application and benefit certificate which together constitute this insurance contract expressly stipulate that the statements in the application were to be construed as warranties the breach of which would vitiate the policy, but the general principles of contract law and of common honesty are to the same effect. (*Rogers v. Fraternal Aid Union,* 122 Kan. 9, 14, 15, 251 Pac. 408, and citations.) The best that appellee can suggest to overcome this barrier is to divert our attention to the fact that two witnesses for defendant who had been concerned in procuring her application for membership insurance and who testified as to the accuracy with which the statements of the applicant were set down in writing by one of them, and what they themselves then knew about the untruthfulness of those statements, did not make a very creditable showing on cross-examination. That suggestion does not help plaintiff's case. Assuming that what those witnesses told was altogether untrue, the fact still remains that Irene Moore's application contained various material false statements. Presumably the statements appear in the application as she gave them. Discrediting the witnesses who testified on the subject does not go far enough to prove that the

applicant made truthful answers to the interrogatories in the application and that the person who set down those answers garbled them so that the application would pass muster when scrutinized by the proper functionaries of the defendant society.

The court holds that in so far as this appeal hinges on the matter of the statements appearing in Irene Moore's application for the benefit certificate of insurance sued on in this action, the falsity of those statements was established; and if that were all that was in issue in this case the cause should have been disposed of by a peremptory instruction in defendant's favor.

But this conclusion brings immediately to the fore the matter involved in the cross appeal. It is well settled that where denial of liability on a policy of insurance is predicated on one specific ground, all other possible grounds of nonliability of which the insurer was then aware are thereby waived, and the insurer cannot afterwards abandon the specific ground and defend on one or more of the others. In *Lucas v. American Yoeman*, 105 Kan. 700, 185 Pac. 901, it was held:

"Where, prior to being sued upon a certificate of fraternal insurance, a beneficiary association denies liability and places its refusal to pay solely upon the ground of accord and satisfaction, it thereby waives other defenses, including a failure to demand arbitration." (Syl. ¶ 1.)

When this case was here before we had to consider, not the soundness of that rule, but whether it had been properly applied, and we decided that it had not. In that instance the plaintiff induced the trial court to *reject* the recitals of the release on her showing that she had not signed it, but to *hold* defendant to other recitals of the release touching defendant's basis for resisting liability and for compromising the claim—insured's death from septicæmia following abortion. This court held that if plaintiff was not bound by the recitals of that release, neither was defendant. But that ruling did not get rid of the whole law of waiver involved in this action. Defendant pleaded several defenses to this action, including the one that there was no liability because the death of the certificate holder was the result of an abortion. Plaintiff replied that all the other defenses except the one based on death resulting from abortion were waived. The facts on which plaintiff relied to establish that waiver appear in her reply. In part, she alleged that defendant's agent stated to Walter J. Helzer—

"Who was representing the plaintiff, that Irene Moore's death was caused

by an abortion and in such a manner that the defendant was not liable to the beneficiary on account thereof under the terms of the benefit certificate sued on herein."

If the facts alleged in the reply just quoted had been established by competent and sufficient evidence, then the other defense pleaded, and particularly the one based on false statements in the application which have already had our consideration in defendant's appeal, should have gone out of this case, and defendant had no recourse except to defend on the ground upon which it first placed its nonliability. Plaintiff should have been permitted to show proof of this waiver—not by the repudiated release, of course, but by any competent testimony or evidence available. Defendant would avoid this obvious conclusion by urging our critical attention to the evidence of Helzer, brother of plaintiff, which was to the effect that he did not tell plaintiff what West, defendant's agent, had communicated to him concerning defendant's claim of nonliability because the insured had died of abortion. Defendant argues that since that matter was not communicated to plaintiff before she brought her action, she was not misled by West's statements and therefore she was entitled to the benefit of the rule of waiver of other known defenses than the one relied on when payment was refused. But in her reply plaintiff pleaded that her brother, Walter J. Helzer, was her representative, and the defense of abortion was communicated to him by defendant's agent, and that plaintiff was an illiterate foreigner who did not understand business matters. Under these circumstances we think the nature of the defense communicated to Helzer was as efficacious as if it had been given to plaintiff personally and understood by her.

But it will be unnecessary to go over the whole controversy again. This case has been tried four times in the district court besides its two appearances in this court. The code authorizes this court to limit the issues requiring a new trial when such practice is feasible and in the interest of all concerned. (Civ. Code, § 307; R. S. 60-3004; *Fontana v. Integrity Mutual Casualty Co.*, 120 Kan. 406, 412, 413, 243 Pac. 1035; *Carlgren v. Saindon*, 129 Kan. 475, 480, 283 Pac. 620.)

Both appeals are sustained, and the judgment of the district court is reversed and the cause remanded for a new trial limited to a determination of the following:

Did E. F. West, agent of the defendant, inform Walter J. Helzer,

brother and representative of plaintiff, that defendant denied liability under the terms of the beneficiary certificate for the single reason that Irene Moore's death was caused by an abortion self-administered or consented to?

If this question is answered in the negative, judgment should be entered for defendant on the theory that the false statements in the application for insurance barred a recovery.

If the question formulated above is answered in the affirmative, then the triers of the fact must determine from such evidence as the parties may adduce whether Irene Moore died from the effects of an abortion or miscarriage produced by herself or by any other person with her consent. If she did, defendant is entitled to judgment. If she did not, plaintiff is entitled to judgment.

It is so ordered.