No. 31,613

THEODORE LACKEY, *Appellant*, v. THE GENERAL CASUALTY & SURETY COMPANY, *Appellee*.

(32 P. 2d 241.)

Opinion filed May 5, 1934.

*Ezra Branine, Alden E. Branine, Fred Ice*, all of Newton, and *George Siefkin*, of Wichita, for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to reform a policy of workmen's compensation insurance and to recover judgment thereon.

It appears that in 1930 plaintiff and four other persons constituted a partnership known in the oil-field industry as a "casing crew" which hired their services to install casings in oil wells for persons or corporations desiring to employ them.

In addition to his regular work as a member of this casing crew plaintiff served his associates as a sort of manager, bookkeeper and general executive, for which special services each of his partners paid him one dollar per job. In all other respects he was their fellow workman, and the amount paid for their services was equally divided among them.

On October 9, 1930, plaintiff obtained from defendant a policy of insurance designated "Universal Standard Workmen's Compensation Policy" which purported to bind defendant to pay compensation for injuries and medical and hospital charges to any person entitled thereto "because of the obligation for compensation for any such injury imposed upon or accepted by this employer" under workmen's compensation statutes. The workmen covered by the policy were classified thus:

"6202-66. Oil or Gas Wells—installation of casing, including drivers, chauffeurs and their helpers."

The rate of premium on which the policy was based was $3.70 for every $100 of remuneration; and the estimated premium which was designated as the "Minimum Estimated Advance Premium" was $64, and this sum was paid by plaintiff and his partners.

On January 4, 1931, while plaintiff and his partners, who styled themselves "The Liberty Casing Crew," were engaged in placing casing in an oil well near Galva, for the firm of Helmerich and Payne, Inc., plaintiff was struck and injured by the rope of the bull wheel. His demand for compensation from defendant was refused on the ground that he was the employer of his fellow workmen of the casing crew and not protected by the terms of the policy.

Hence this lawsuit to reform the policy and to recover compensation thereunder.

The cause was tried by the court. There could be no dispute that plaintiff was named in the policy as employer. In the instrument itself following two crowded pages of printed matter of some 2,400 words and another page as a rider of several hundred words in addition, it is stated that the policy issued to *Theodore Lackey* should take effect on a certain day and hour; and on another page of the

instrument entitled "Declarations" appears the following: "Item 1. Name of this employer—*Theodore Lackey*."

The evidence for plaintiff tended to show the facts as stated above. Plaintiff testified that he called on defendant's agent and asked for a policy to protect the casing crew of five members. He paid $64 for the policy, the money being contributed by the five partners. In December the agent made an audit of the wages of the casing crew, and pursuant thereto the current premium of $59 was exacted by defendant and paid by the partners.

A clerk in the agent's office testified that she wrote the application for the insurance.

"I didn't ask him whether he was an individual, copartnership, corporation or estate. It was my understanding that he was an individual. The minimum premium of $64 was paid. We relied upon the audit to take care of any additional premium."

The defendant's pay-roll auditor testified that he made the audit on the policy and that the premium collected was based upon the wage earnings of plaintiff and his four associates. The trial court made findings of fact, in substantial accord with the foregoing, and which, in part, read:

"3. C. W. Steves, manager of the agency that had written the policy, after an examination of plaintiff's books in December, 1930, estimated the additional premium necessary at that time to be $59.35, leaving the maximum advance premium of $64 intact, and the wages of the plaintiff was included in arriving at the amount of the premium. . . .

"4. January 4, 1931, plaintiff, while working as a member of the Liberty Casing Crew, was injured, made demand for compensation under this policy.

. . . . . . . . . . . .

"5. March 26, 1931, prior to the termination of the policy period, defendant company sent an auditor to plaintiff, and such auditor audited the books of the Liberty Casing Crew. In such audit the auditor discovered that the wages of plaintiff had been included by C. W. Steeves in computing the premium due in December, 1930, gave credit for such and found that the Casing Crew was due a refund or return of premium of $39.58, which amount was offered to plaintiff and by plaintiff refused. The amount was later tendered into court."

On these findings the court reached the following conclusions of law:

"The findings of fact heretofore made in this case do not warrant a reformation of the contract as prayed by plaintiff and reformation is refused.

"Plaintiff is entitled, however, to the return of so much of the premium paid based on wages earned by himself as an individual and judgment will be

rendered for plaintiff for such amount, $39.58, which has heretofore been tendered into court by defendant."

Judgment was entered in favor of defendant, and plaintiff appeals, complaining of the net result.

It is perfectly clear that the policy for which defendant received two premium payments, $64 and $59, either insured this plaintiff or it insured nobody, and defendant would have had just as good a defense against any other member of the casing crew who might have sustained an injury in the course of his work, putting casing into or taking it out of an oil well. None of the five persons supposed to be protected by the insurance for which they paid their money was an employee of plaintiff. They were partners and fellow workmen. And it seems altogether unjust that defendant should take their money and give nothing in return. Of course, after plaintiff was hurt defendant tendered back part of the premium. But why only part of it? Because defendant recognized that it had made a contract of insurance. And the contract was to protect *five* persons.

By retaining part of the premium it may be inferred that it still regards the contract as a valid one to protect *four* persons; but in our view it is still valid as to five. There is nothing new in this law-suit—nor even in the defense to plaintiff's claim. Group insurance of various sorts is issued to workingmen who, by economic distress, are compelled to find employment by their own coöperative efforts and they become in effect their own employers; and, of course, the technical niceties of the ordinary relationship of employer and employee cannot exist in their situation. But the courts must see to it that this somewhat anomalous situation of workmen is not taken advantage of by enterprising folk who would levy tribute on them without rendering a reasonable *quid pro quo*. The present case does not differ in principle from *Fontana v. Integrity Mutual Casualty Co.*, 120 Kan. 406, 243 Pac. 1035, where a group policy of compensation insurance was enforced although the person designated in the policy as employer was erroneous, and the insured persons, as here, were working on their own account. (See, also, *Stewart v. Commonwealth Casualty Co.*, 137 Kan. 919, 22 P. 2d 435, syl. ¶ 1.)

There is nothing novel in the rule of contract law that the practical contruction which has been given to a contract by the parties themselves should prevail over its literal terms. (*Berg v. Scully*, 120 Kan. 637, 243 Pac. 119; *District of Columbia v. Gallaher*, 124 U. S. 505, 31 L. Ed. 526.) In *Elliott v. Bankers & Shippers Ins. Co.*,

137 Kan. 492, 21 P. 2d 376, where the wrong name had been inserted as owner in a policy of insurance, it was said:

"It would have been an appropriate remedy for plaintiff to have asked for a reformation of the instrument, but that is not always necessary. If the provisions of the policy interpreted in view of the extrinsic facts show the real intent of the parties, reformation is not essential."

This court is constrained to hold that the record shows that plaintiff established his cause of action against defendant. Whether the contract be formally reformed is immaterial since the controlling facts on which defendant's liability rests are established. The amount of the liability, however, is not clearly determinable from the record, and the cause will have to be remanded for that purpose.

The court has noted the trial court's finding that plaintiff is receiving compensation as an injured employee of the firm of Helmerich & Payne, Inc., in whose service the Liberty Casing Crew were working when plaintiff was injured. Under the issues of this case that fact was of no consequence, as no defense in whole or in part was predicated upon it.

The judgment is reversed, and the cause remanded with instructions to determine the extent of plaintiff's injuries and the amount he should receive therefor, to be computed in accordance with the provisions of the Kansas compensation act, and to enter judgment therefor in plaintiff's behalf.