No. 32,958

HENRY L. ROLFSMEYER, *Appellee*, v. THE KANSAS LIFE INSURANCE COMPANY, now known as THE PYRAMID LIFE INSURANCE COMPANY, *Appellant*.

(61 P. 2d 865)

Opinion filed November 7, 1936.

*Ralph T. O'Neil, John D. M. Hamilton* and *Barton E. Griffith,* all of Topeka, for the appellant.

*Oscar Raines, Ralph F. Glenn, Wendell B. Garlinghouse* and *Ivah Raines Glenn,* all of Topeka, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal was taken by the defendant life insurance company from the findings, conclusions and judgment of the trial court in favor of the beneficiary in one of its policies.

There is no substantial controversy as to the facts, and the legal question involved is as to the use of the value of matured and unsur-

rendered coupons attached to the policy for the purchase of automatic extended term insurance in the event of default of payment of premium after three years' premiums have been paid. It was found by the trial court, and admitted by the parties to the action, that the value of the matured, unused and unsurrendered coupons attached to the policy at the time the premium became in default was $16.86, which it is admitted if it was in law a "reserve on the policy and on dividend additions thereto," and mandatory as a matter of law, regardless of the provisions of the policy and the failure of election by the insured, it would have been sufficient with the days of grace to have extended the policy beyond the time of the death of the insured.

This was a policy for $1,000 on the life of Nellie D. Rolfsmeyer, issued on June 27, 1928, in which her husband, the plaintiff, was the beneficiary and on which the annual premiums were $30.38, and the policy provided that the premium might be paid annually, or semi-annually in the sum of $15.80, or quarterly in the sum of $8.05. The premium was regularly paid for the first three years. In 1931 the premium was paid by the execution of a note to the company of $30.38. In 1932 it was paid by another note which included the amount due on the former note and some interest, which note was in the total sum of $61.52. On June 27, 1933, which was the end of the fifth policy year, the principal and interest on this premium note was $65.21, and the value of the matured, unused and unsurrendered coupons at that time was $20.07; that the cash surrender value of the policy on that date (June 27, 1933), exclusive of the value of the premium-reduction coupons, was $62, which failed to pay the note of $65.21 by a balance of $3.21. This balance on the note was deducted by the defendant company from this coupon value of $20.07, leaving a balance of $16.86, which the company offered to return to the plaintiff in cash. The court found that while the annual premium on the policy was $30.38, the level premium upon the policy after the first year was $27.72, and that included in the annual premium of $30.38 there was an annual charge of $5.86 to pay for each of the coupons, and that the charge or cost of said coupons was not made a separate charge but was added to and made a part of the total annual premium for the policy.

This policy being issued, as above stated, on June 27, 1928, was subject to the provisions of the insurance law adopted in 1927. A part of subdivision 6 thereof is as follows:

"A provision that in event of default in premium payments, after premiums shall have been paid for three years, the insured shall be entitled to a stipulated form of insurance, effective from the due date of the defaulted premium, the net value of which shall be at least equal to the reserve at the date of default on the policy and on dividend additions thereto, if any, exclusive of the reserve on account of return premium insurance and on total and permanent disability and additional accidental death benefits (the policy to specify the mortality table and rate of interest adopted for computing such reserves), less a percentage (not more than two and one half) of the amount insured by the policy and of existing dividend additions thereto, if any, and less any existing indebtedness to the company on or secured by the policy." (R. S. 1933 Supp. 40-420.)

The policy, under the heading of "Surrender Values," provides as follows:

"(c) If the policy be not surrendered as above, the face amount less any indebtedness shall automatically continue as term insurance for such a term as is hereinafter provided, but without the right to loan or surrender values."

This is followed in the policy by a topic entitled, "Basis of Values," the first paragraph of which is as follows:

"The cash surrender value shall equal the reserve hereon at the date of default, less not more than 2½% of the face amount of this policy. The reserve shall be computed upon the American experience table of mortality with interest at 3½% per annum according to the preliminary term method of valuation."

It will be observed that neither the statute nor the main body of the policy mentions coupons or their use under such circumstances. The coupons, which are made a part of the policy in question, are denominated "Guaranteed Premium Reduction Coupons," and under that heading in the policy and above the nineteen coupons, made a part of the twenty-year policy, appears the following:

"While this policy is kept in force by the payment of premiums in cash the owner may select one of the following options:

Option 1. Surrender any matured coupon to the company on any premium-due date in reduction of the premium then due; or

Option 2. Surrender any matured coupon to the company for its cash value;

(Omitting three other options not applicable here.)

"Unused coupons shall be payable on presentation, together with compound interest at the rate of 3½% per annum for each full year after due dates thereof; or in event of the death of the insured, said amount shall be payable to the beneficiary or beneficiaries hereunder."

The court found that the defendant has set up and maintained a reserve with the commissioner of insurance of the state of Kansas covering this policy and the premium-reduction coupons attached

thereto. In the evidence of the defendant it is shown that such reserve maintained with the commissioner of insurance is separate from a deposit for coupons which is in addition to the regular reserve. It is also shown in the evidence that when the $3.21 was appropriated by the company for the payment of the balance due on the premium note and interest thereon, it was charged up as an "off-set" to the value of the guaranteed premium reduction coupons.

The peculiarity of the situation before us is that neither the main provisions of the policy, nor the statute enacted only a few months before this policy was issued, contain any reference to such coupons.

The appellant company maintains that the value of these guaranteed premium-reduction coupons is not a reserve within the scope or legal meaning of reserve, as contained in the statute above quoted or the provisions of the policy. The statute above quoted, with reference to extension term insurance at the time of default in premium payments, names only reserve on the policy and on dividend additions thereto.

Our attention is called to the distinction made between life reserve and coupon liability in the federal income-tax case of *Helvering v. Insurance Co.*, 294 U. S. 686, 79 L. Ed. 1227, 55 S. Ct. 572, where it was held that the coupon values are the equivalent of cash and may be used for the purpose of paying premiums, etc., and when so applied they cease to exist as coupon liabilities and automatically become a part of life insurance reserve which differs essentially from coupon liability. This was a case where the insurance company was deducting from its assets in its statement for federal income tax "an amount equal to four percent of the mean of the 'reserve funds required by law.'" It was an income-tax matter of a life insurance company in the state of Utah where it was required under the laws of that state that "the assets of such company must equal or exceed all liabilities for losses reported, expenses, taxes and other outstanding liabilities, including the legal reserves as provided in sections . . ." It was there held that a coupon liability was not based upon any contingency, as a life insurance policy is, and that the deduction allowed the company should be on the insurance reserve alone and the reserve against matured coupons should be excluded from such deduction. This is a recent case and makes a nice distinction between insurance reserve and coupon reserve for the purpose of deduction from federal income tax, and it may afford a good and sound reason for the de-

fendant company in the case at bar distinguishing between the securities given to the commissioner of insurance, one for insurance reserve and the other called a deposit for coupon liability.

Appellant strongly maintains that the values of the guaranteed premium-reduction coupons not only are not reserves on the policy, but neither are they reserves on dividend additions thereto, citing the case of *Williams v. Union Central Co.*, 291 U. S. 170, 54 S. Ct. 348, where Chief Justice Hughes so clearly distinguished between many insurance terms, and among others defined dividend additions, which term is used in our statute above cited. It was in the Williams case defined as follows: "A paid-up addition to a policy of life insurance is an amount added to the face of the policy paid for by a single premium, for which there must be a legal reserve." No coupons of any kind were involved in the Williams case. In the opinion in that case reference is made to decisions in Texas and other states, among others to the case of *Great Southern Life Ins. Co. v. Jones*, 35 F. 2d 122, as relating to a similar statute of Oklahoma, and adds—

". . . the policy provided for guaranteed 'premium reduction coupons' which were fixed liabilities requiring a reserve, and were not dividends in the proper sense as in the instant case." (p. 182.)

There are different kinds of dividends, as is indicated in this comment on the coupons not being dividends in the "proper sense." Dividends are of many kinds and from many sources. The value ascribed to these coupons under consideration is entirely different from the dividend additions resulting in an additional policy as considered in the Williams case.

It may not be necessary in this case to determine which the matured and unpaid coupons are, whether reserve or dividend. If they are either in this case they will come under the rule for the purchase of extended term insurance. A dividend in insurance is defined by Webster as "a share of surplus allocated to a policyholder in a participating insurance policy, which generally represents a return of a portion of the premium not needed to meet losses or expenses and a distribution of earnings from investment." The insurance company in Kansas places an extra amount with the commissioner of insurance, as it does for the reserve on the policy, which the defendant company in this case calls a deposit. In the Jones case, *supra*, it is called when arising from coupons, a dividend, while in the Williams case, in commenting on the decision in the Jones case, it is called a reserve.

In the Jones case, which was an Oklahoma case almost exactly like the one at bar and decided by the Circuit Court of Appeals, it was held:

"Premium-reduction coupons which were charged for in each premium, in addition to carriage risk of insurance, and which matured annually, and could be used to apply on annual premiums or left with company to acquire fully paid policy, held to constitute dividends, since face value of each coupon either cashed or applied on the premium must be set aside annually by the company and held to the credit of the insured.

"Life insurance company cannot insist on forfeiture of policy for nonpayment of premium, where it has in its possession dividends or funds due the insured sufficient to pay the premiums at maturity.

"That automatic extension clause of life policy referred only to value found in table of guaranteed values did not prevent application of premium reduction coupons, constituting dividends, to purchase of extended insurance on insured's failure to pay premiums." (Syl. ¶¶ 1, 2, 4.)

*Missouri State Life Ins. Co. v. Garritson*, 172 Okla. 483, 45 P. 2d 493, decided recently by the Oklahoma supreme court, followed the decision of the Circuit Court of Appeals in the Jones case, and in the opinion denying a rehearing it fully distinguished between the Williams and the Jones cases, and among such distinctions is the fact that in the policy in the Williams case it was specifically provided that "if the policy lapses, the dividend then shall be paid in cash," and that no such provision was in the Oklahoma policy. And further in the rehearing is emphasized the comment in the Williams case that the premium-reduction coupons are fixed liabilities requiring a reserve.

In *Commissioner of Int. Rev. v. Great American Life Ins. Co.*, 70 F. 2d 133, involving internal revenue on reserve funds of an insurance company and the right of the insurance company to make deductions, the Circuit Court of Appeals of the tenth circuit followed the decision in the Williams case, holding that coupons of the kind under consideration were fixed liabilities requiring a reserve, and adhered to that view in the rehearing of the case.

Many other authorities are cited by both parties on this subject, but none of them as pertinent or recent as those herein discussed. We conclude that the matured, unused and unsurrendered guaranteed premium-reduction coupons are reserve and a dividend, but not the same kind of a dividend as that involved in the Williams case, and the value thereof was under our statute and the provisions of the policy available for the purchase of automatic extension term insurance. Some policies and the statutes under which they are

issued do not provide for the automatic purchase of term extension insurance and decisions accordingly are to the effect that the company is not required to use the funds belonging to the insured, which are in the hands of the company for such purpose, but such is not the case with the statute in this state nor the policy here under consideration. Such provision is specifically mentioned as above quoted.

It is said in 92 A. L. R. 712 that—

"The general rule is that an insurer cannot insist upon a forfeiture for the nonpayment of a premium, where it has in its possession accrued dividends which belong to the insured and are sufficient to cover premiums due, since it is its duty, under such circumstances, to apply the dividends to the payment of the premiums, and prevent a forfeiture. . . ." (See, also, 32 C. J. 1308.)

But entirely aside from the question as to the value of matured, unused and unsurrendered guaranteed premium-reduction coupons being reserve or dividend additions, or dividends of any kind, which is a matter of construction, the defendant company in this case has placed a construction upon such value as applied to this case by appropriating $3.21 of such value or fund in its possession to pay the balance due on the premium note falling due June 27, 1933, which it had no right to take or so appropriate if its contention is correct; and by so taking and applying it, even as an "off-set," it necessarily placed an interpretation and construction upon the provisions of its policy that such fund taken without the knowledge or consent of the insured was available to pay premiums on the policy, and it thereby made the balance of such fund available to the use of payment of term extension premiums to keep the policy in force.

In *Lackey v. General Casualty & S. Co.,* 139 Kan. 485, 32 P. 2d 241, it was said:

"There is nothing novel in the rule of contract law that the practical construction which has been given to a contract by the parties themselves should prevail over its literal terms." (p. 488.)

In *Antrim v. International Life Ins. Co.,* 128 Kan. 65, 275 Pac. 1084, it was held:

"A litigant is estopped and precluded from maintaining an attitude, with reference to a transaction involved, wholly inconsistent with his or her previous acts and business connection with such transaction." (Syl. ¶ 5.)

In 32 C. J. 1150 it is said:

"The construction placed upon a contract of insurance by the parties as

evidenced by acts, conduct, or declarations indicating a mutual intent and understanding will be adopted by the courts . . ."

In *Evans v. Accident Association*, 102 Kan. 556, 171 Pac. 643, it was held:

"The general rule is that if the terms of an accident policy are obscure or open to more than one construction, that one which is more favorable to the insured must prevail." (Syl. ¶ 2.)

It was also held in *Sebal v. Columbian Nat. Life Ins. Co.*, 144 Kan. 266, 58 P. 2d 1108:

"If provisions in a policy of insurance result in ambiguity, inconsistency or uncertainty, forfeiture must be denied, as under those circumstances the provisions of the policy must be construed in favor of the insured." (Syl. ¶ 2.) (See, also, *Fire Association v. Taylor*, 76 Kan. 392, 91 Pac. 1070.)

It is contended by the appellant that estoppel or anything in the nature thereof was not pleaded in the petition by the appellee in this case, and therefore after trial has been had, it cannot be raised and enforced. The petition did not in specific terms plead estoppel, but it alleged that "The form and contents of said insurance policy No. 28728 are fully known to said defendant, having been prepared by it," and the answer alleged "insured did in fact pay to this defendant the annual premium due thereon up to and until the premium due on the 27th day of June, 1933," which is a proper basis of inconsistency as to the use of the $3.21 admitted by the defendant in its answer to have been used for the payment of premium which it says it was paid in full up to June 27, 1933. The reply denied all allegations contained in the answer which do not admit the allegations of the petition. We do not think it is necessary in all cases for the pleadings to use the word "estoppel" when the facts alleged indicate and show it. It was said in *Yeoman v. Morris*, 135 Kan. 566, 11 P. 2d 683:

"Appellee argues that estoppel cannot be relied upon because it was not pleaded. Though the word was not used the facts constituting the estoppel were pleaded. That is sufficient." (p. 570.)

The judgment is affirmed.